IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CYNTHIA SEAMON, individually, and CYNTHIA SEAMON, as Personal Representative of the Estate of KENNETH SEAMON deceased ) ) ) ) ) | Case No. 2:12cv-895-WKW-TFM |
| Plaintiff, ) | |
| vs. ) | |
| REMINGTON ARMS COMPANY, LLC, ) | |
| Defendant. ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff Cynthia Seamon, individually and as personal representative of the Estate of Kenneth Seamon by and through her attorneys, and for her claim for relief against Defendant, Remington Arms Company, Inc., states and alleges as follows:

### PARTIES

1. Plaintiff Cynthia Seamon is a resident of Deatsville, Autauga County, Alabama. She is the wife of deceased person Kenneth Seamon.

2. Defendant Remington Arms Company, LLC. (hereinafter "Remington") is a Delaware Corporation and is authorized to do business in the State of Alabama. Service should be made upon its registered agent, CT Corporation System 2 North Jackson Street, Suite 605, Montgomery, Alabama 36104 unless Defendant Remington Arms Company, LLC, waives service pursuant to Rule 4(d), Fed.R.Civ.P.

## JURISDICTION, VENUE AND SERVICE OF PROCESS ALLEGATIONS

3. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. Sec. 1332 in that the Plaintiffs are citizens of the State of Alabama, and that the Defendant is a corporate citizen of the State of Delaware, and the amount in controversy exceeds Seventy-Five Thousand ($75,000.00) Dollars.

4. Venue is proper within the Northern Division because Plaintiff is a resident of Autauga County, Alabama, and the incident which gives rise to this complaint occurred within Autauga County, Alabama.

## COMMON ALLEGATIONS

5. Plaintiff Cynthia Seamon resides at 122 David Drive, Deatsville, AL 36022 and is a citizen of the State of Alabama.

6. Defendant Remington, was, and is now engaged in the business of designing, manufacturing, assembling, distributing and selling firearms, and in this regard did design, manufacture, distribute, sell and, place into the stream of commerce, the Remington Model 700, 7mm 08 bolt action rifle including the action, fire control system, and safety, bearing Serial Number G6318499 (hereinafter "rifle"), knowing and expecting that said rifle would be used by consumers and around members of the general public.

7. Prior to November 30, 1993, DuPont owned 100% of the stock in the company known as Remington Arms Company, Inc. (now SGPI). On or about November 30, 1993, RACI (Remington Arms Acquisition Corporation, Inc.) purchased from DuPont substantially all of the income producing assets of Remington Arms Company, Inc. (now known as SGPI), including the corporate name. The company formerly known as Remington Arms Company, Inc. changed its name to Sporting Goods Properties, Inc., and RACI changed its name to Remington Arms Company, Inc. SGPI retained certain non-income producing assets, some with significant environmental and other liabilities such that its net worth was reduced to a small fraction of its former so that SGPI may not be able to pay reasonable judgments in this and similar litigation.

8. At all times pertinent to this action, SGPI and DuPont were and are the alter ego of each other and in essence constitute one legal entity in which SGPI operates as a division of DuPont. The separate incorporation of SGPI is a sham in that it is merely a corporate veil which insulates DuPont from liability for products manufactured and sold by SGPI. DuPont exerted, and currently exerts extreme influence, complete dominion and/or absolute control over the corporate activity and function of SGPI. DuPont's continued operation of SGPI as a separate legal entity is a subterfuge designed to defeat public convenience, justify a wrong, perpetrate a fraud and/or otherwise work an injustice on Plaintiffs herein and the general public. The conduct of DuPont and/or SGPI has harmed or will harm Plaintiffs and the general public, justifying piercing of the corporate veil resulting in DuPont being liable for the acts and omissions of SGPI as they are in reality one legal entity.

9. Defendant Remington, SGPI and DuPont are so intertwined contractually for the liabilities, past, present and future, of each other that they are, in fact, one entity and therefore, the corporate veils of each company should be pierced to properly ascertain the responsible parties for the allegations contained herein. The Asset Sale/Purchase Agreement transferring the assets of SGPI to Remington and various revised or supplemental agreements spreads responsibility and authority for product liability claims among the three entities as it is unclear who bears the contractual liability for this claim.

10. Remington and/or DuPont expressly and impliedly agreed to assume certain debts and responsibilities, including the product liability of SGPI by the terms of the Asset/Sale Purchase Agreement as well as the continuing relationship between Remington, DuPont and SGPI. Consequently, DuPont and/or Remington are the corporate successors to the product liability claims asserted, now and in the future, against SGPI, including this particular lawsuit.

11. Remington continues in the design, manufacture, distribution and sale of all Remington Arms product lines including the Remington Model 700 bolt action rifle, without any significant changes. Remington maintains the same plants, employees, organization, contracts, customers, suppliers, advertising, products and name acquired in the asset purchase. Remington acquired the entire company from SGPI through an asset/sale purchase in order to avoid and/or limit the liability resulting from an outright purchase of the stock from DuPont. Consequently, DuPont

and/or Remington are the corporate successors to the product liability claims asserted, now and in the future, against SGPI, including this particular lawsuit.

12. Remington, DuPont and SGPI acted fraudulently with respect to the asset/sale purchase in that its purpose was to avoid and/or limit the responsibility of DuPont and/or Remington for the debts of SGPI, particularly its product liability. Consequently, DuPont and/or Remington are the corporate successors to the product liability claims asserted, now and in the future, against SGPI, including this particular lawsuit.

13. At all times pertinent to this action SGPI was an agent of DuPont acting in the course and scope of its agency relationship thereby making its principal, DuPont, liable for all of SGPI's acts and omissions, either by exercising direct control over SGPI, or by adopting and ratifying SGPI's acts or omissions.

14. At all times pertinent to this action, agents of DuPont, acting within the course and scope of their agency relationship, controlled SGPI, thereby making SGPI's acts and omissions those of their principal, DuPont, either by exercising direct control over SGPI, or by adopting and ratifying SGPI's acts or omissions.

15. On November 26, 2011, Plaintiff's husband Kenneth Seamon (hereinafter "Seamon" or "Plaintiff's decedent") was hunting deer alone on property leased and used solely by his hunting club near Deatsville, Autauga County, Alabama.

16. When calls to Seamon went unanswered, his family grew worried and began looking for him. Seamon was found by his son-in-law, dead in his tree stand as a result of a gunshot wound to the chest from his Model 700 Remington Bolt Action rifle, Serial No. G6318499.

17. When Seamon was found, his right hand was in a grasping position and the rifle was on the ground below with two ropes attached to it.

18. Seamon was shot by his own rifle as he was raising or lowering the rifle to or from the tree stand.

19. When the rifle was found, the safety was in the fire position.

20. The rifle fired without a pull of the trigger.

21. Kenneth Seamon was forty nine years old at the time of his death. He was married to Cynthia Seamon and had two natural children, Haley Seamon and Brittney Malone f/k/a Brittney

Seamon.

22. Remington Arms Co., is referred to herein as "Defendant."

23. Plaintiff Cynthia Seamon is bringing this action to recover punitive damages from Defendant for the wrongful death of Kenneth Seamon pursuant to Ala. Code § 6-5-410.

## COUNT I
## MANUFACTURER'S LIABILITY

24. Plaintiff incorporates herein by reference each and every allegation contained in Paragraphs 1 through 23 of the Complaint as though set forth at length herein.

25. The Remington Model 700 bolt action rifle, as designed, manufactured, sold and distributed by Defendant was in a defective condition, unreasonably dangerous to the user, consumer or bystander, their property and the public in general.

26. Kenneth Seamon used the rifle in a reasonably foreseeable manner.

27. The rifle as designed, manufactured, sold and distributed by Defendant was in substantially the same condition as when it was manufactured by Defendant.

28. The rifle was defective and unreasonably dangerous when it was sold by Defendant and at the time it left their possession and control.

29. Plaintiff's decedent was injured as a direct and proximate result of the defective design, manufacture, sale and distribution of the rifle.

30. Plaintiff has suffered and is entitled to recover damages from Defendant as a direct and proximate result of the defective design, manufacture, sale and distribution of the rifle.

31. Defendant's conduct in the design, manufacture, sale and distribution of the Remington Model 700 bolt action rifle was outrageous, done with actual knowledge and malice, exhibiting a complete indifference or conscious disregard for the rights and safety of users and consumers of the rifle and the general public, justifying punitive or exemplary damages.

WHEREFORE, Plaintiff prays for Judgment under Count I of her Complaint against Defendant, for such damages in such amounts as may be determined by the jury at a trial, her costs here incurred, and for such further relief as the Court deems just and proper.

## COUNT II

## MANUFACTURER'S LIABILITY FAILURE TO WARN

32. Plaintiff incorporates herein by reference each and every allegation contained in Paragraphs 1 through 31 of the Complaint as though set forth at length herein.

33. The Remington Model 700 bolt action rifle was in a defective and unreasonably dangerous condition because of the failure to warn of its propensity to unexpectedly discharge without pulling the trigger and the failure to properly instruct about its care and maintenance.

34. Plaintiff's decedent did not have any knowledge of such defective conditions present in the rifle and had no reason to suspect it was unreasonably dangerous prior to the inadvertent discharge which killed him.

35. As a direct and proximate result of the failure to warn of the rifle's propensity to unexpectedly discharge without pulling the trigger and failure to properly instruct about its care and maintenance, Plaintiff has suffered and is entitled to recover damages from Defendant.

36. Defendant's conduct in the failure to warn of the Remington Model 700 bolt action rifle was outrageous, done with actual knowledge and malice, exhibiting a complete indifference or conscious disregard for the rights and safety for users and consumers of the rifle and the general public, justifying punitive or exemplary damages.

WHEREFORE, Plaintiff prays for Judgment under Count II of her Complaint against Defendant, for such damages in such amounts as may be determined by the jury at a trial, her costs here incurred, and for such further relief as the Court deems just and proper.

## COUNT III

## NEGLIGENT DESIGN AND MANUFACTURE

37. Plaintiff incorporates herein by reference each and every allegation contained in Paragraphs 1 through 36 of the Complaint as though set forth at length herein.

38. Defendant negligently designed, manufactured, sold and distributed the Remington

Model 700 bolt action rifle in its defective and unreasonably dangerous condition.

39. Defendant was negligent in one or more of the following respects:

   a. In designing a fire control with a "trigger connector";

   b. In designing a fire control with manufacturing tolerance build up;

   c. In designing a fire control that failed to include preset engagement between the trigger connector and the sear;

   d. In designing a fire control that was susceptible to the accumulation of debris, lubrication build up, and/or the accumulation of rust;

   e. In designing a fire control that was susceptible to adjustment;

   f. In designing a fire control that was susceptible to the presence of manufacturing burrs or debris;

   g. In designing a fire control that will fire without a pull of the trigger;

   h. In designing a fire control that will fire when the safety is shifted from the "safe" to the "fire" position;

   i. In designing a fire control that will fire when the bolt is cycled;

   j. In designing a fire control that will "jar off";

   k. In designing a fire control that uses improper materials, including "powdered metal" for the sear that are unusually susceptible to normal wear and tear;

   l. In manufacturing a fire control that has burrs or manufacturing debris within the fire control;

   m. In manufacturing a fire control without proper or adequate quality control procedures or checks;

   n. In failing to warn users and handlers of the rifles of the potential for firings in the absence of a pull of the trigger;

   o. In failing to warn users and handlers of the risks and hazards of improper maintenance of the rifle;

   p. In failing to warn users and handlers of the risks and hazards of adjustment of the fire control;

   q. In failing to inform or advise users and handlers of the proper procedures for

7

        maintenance of the rifle;

r.     In failing to inform or advise users and handlers of the proper procedures for adjustments to the fire control.

40. As a direct and proximate result of Defendant's negligent design, manufacture, sale and distribution of the rifle, Plaintiff has suffered and is entitled to recover damages from Defendant.

41. Defendant's conduct in the design, manufacture, sale and distribution of the Remington Model 700 bolt action rifle was outrageous, done with actual knowledge and malice, exhibiting a complete indifference or conscious disregard for the rights and safety of users and consumers of the rifle and the general public, justifying punitive exemplary damages.

WHEREFORE, Plaintiff prays for Judgment under Count III of her Complaint against Defendant, for such damages in such amounts as may be determined by the jury at a trial, her costs here incurred, and for such further relief as the Court deems just and proper.

## COUNT IV
## NEGLIGENT FAILURE TO WARN

42. Plaintiff incorporates herein by reference each and every allegation set forth herein in Paragraphs 1 through 41 of the Complaint as though set forth herein.

43. Defendant negligently failed to warn of the Remington Model 700 bolt action rifle's propensity to discharge unexpectedly without pulling the trigger and failed to properly instruct about its care and maintenance.

44. Plaintiff's decedent did not have any knowledge of said defective conditions present in the rifle and had no reason to suspect it was unreasonably dangerous prior to the inadvertent discharge which killed him.

45. As a direct and proximate result of Defendant's negligent failure to warn of the rifle's propensity to unexpectedly discharge and failure to properly instruct about its care and maintenance, Plaintiff has suffered and is entitled to recover damages from Defendant.

46. Defendant's conduct in the design, manufacture, sale and failure to warn of the

Remington Model 700 bolt action rifle was outrageous, done with actual knowledge and malice, exhibiting a complete indifference or conscious disregard for the rights of safety of users and consumers of the rifle and the general public, justifying punitive or exemplary damages.

WHEREFORE, Plaintiff prays for Judgment under Count IV of her Complaint against Defendant, for such damages in such amounts as may be determined by the jury at a trial, her costs here incurred, and for such further relief as the Court deems just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff prays that the causes of action alleged herein be tried in this Court before a jury of her peers.

RESPECTFULLY SUBMITTED this 10th day of October, 2012.

Respectfully submitted,

BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.

BENJAMIN L. LOCKLAR
(ASB-5022-C63B)
Attorney for Plaintiff

BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
218 Commerce Street
Post Office Box 4160
Montgomery, AL 36103
(334) 269-2343
(334) 954-7555 - FAX
ben.locklar@beasleyallen.com

**MONSEES, MILLER, MAYER,**
**PRESLEY & AMICK**
A Professional Corporation
Timothy W. Monsees, MO # 31004
4717 Grand Avenue, Suite 820
Kansas City, MO 64112
Tele:  816-361-5550
Fax:   816-361-5577